## THOMAS S. SMITH *v.* ELIZABETH ESPY, HENRY FREAS, JR., et al.

1. A deed fraudulent as to judgment creditors may be impeached by a purchaser holding a conveyance under that judgment; but such purchaser stands in no better situation than the judgment creditor filing a bill to avoid the alleged fraudulent deed. To ascertain, therefore, the rights of the complainant, and whether he is entitled to the relief sought by his bill, we must examine into and ascertain the rights of the judgment creditors under whom he claims.

2. One cannot question a conveyance as fraudulent against himself as a creditor, who advised and counseled its execution, who drew the deed, knowing it was intended to answer a fraudulent purpose, and, as a master of this court, took its acknowledgment.

3. A court will refuse to listen to any explanations of a subsequent transaction between the *parties* to a fraud, as an antidote to the poison infused into the original transaction. But where one who had been no partaker in the iniquity of the transaction became a party to a deed, with no intention of defrauding any one, and at a time when there was no person who could be injured by her accepting it, and where neither party contemplated any improper use to be made of the deed then or thereafter; and where the complainant claims under judgment creditors not standing in a position entirely aloof from the fraudulent transactions, the deed will not be set aside as fraudulent.

The complainant is a purchaser of the real estate in controversy, under a judgment against Henry Freas, Jr. Elizabeth Espy holds the property by deed from Henry Freas, prior to the judgment. The bill is filed to set aside that deed on the allegation that it is fraudulent, and was made and executed by Henry Freas, Jr., to defraud his creditors.

The cause was heard on the bill; the separate answers of Elizabeth Espy, Henry Freas, Jr., and A., another defendant, and proofs taken on both sides. The bill alleges that the defendant, Henry Freas, Jr., having some title to the land in question, on the fifth of May, 1846, fearing that his guardian was about to obtain a decree against him in the Orphans' Court of Salem county, with the advice of his brother William, executed a deed for the land to his mother-

in-law, Elizabeth Espy, a poor woman, who worked for her living; that A. acted as counsel, and drew the deed, and, as master in chancery, took the acknowledgment; that at the time of its execution Henry said that the deed was made to defraud his guardian and other creditors, and that no consideration was paid.

That E. and A. in May, 1849, recovered a judgment in attachment against Henry Freas, Jr., in the Salem Circuit; that under this attachment this land was attached and sold to one Josiah S. Hacket, and a deed made to him, and that subsequently Hacket and wife conveyed to the complainant; that Elizabeth Espy admitted to A. that she had never paid anything for the deed, yet she meant to hold it to prevent Henry's creditors from getting the land, and meant to hold it for Henry's children.

The bill prays that the deed to Elizabeth may be set aside and declared void as against the complainant, &c.

A. in his answer says that Henry applied to him to draw the deed; told him he wanted to execute it to cheat his guardian and other creditors; that he drew the deed, and, as a master in chancery, took the acknowledgment; and he admits all the other matters charged in the bill as within his knowledge.

Henry Freas, Jr., gives the following account of the execution of the deed in question:

" This defendant, some time prior to the execution of said deed, had proceeded in the proper court of Salem county aforesaid, against his testamentary guardian, Henry Freas, to recover moneys which it was supposed were unjustly withheld by said Freas, in the settlement of his accounts as guardian. The management of such proceedings was intrusted by this defendant to A. as his attorney, who is named as one of the defendants in complainant's bill. For some reason which defendant cannot explain, the suit or proceeding was decided against him, and a decree or judgment was entered for the costs of the same, which decree or judgment, as defendant was instructed, became a lien upon the said

interest in the real estate in Salem county, owned by him. And defendant also says that some time afterwards, on or about the 9th day of June, A. D. 1846, he, together with his brother William, (who is also named as defendant,) called on said A., then on a visit in Philadelphia. The conversation turned on the decree or judgment which had been lately obtained by said Henry Freas against this defendant, and its effects upon his said interest; whereupon the said William Freas suggested that this defendant should make a deed for said interest to some one whom defendant should name. The said A., acting as attorney for this defendant, advised that this should be done, and that it should be ante-dated, so as to make it appear as if the deed had been made before this decree or judgment had been entered. A. then agreed to draw the deed, and have it ready in the course of a day or two, when the defendant was to call and execute it. At the meeting here referred to, upon its being suggested by this defendant that probably Mrs. Espy, whose name had been proposed by said William Freas as a suitable one to be used in said deed, might object to her name being so used, the said A. remarked that that would make no difference, as it was a mere matter of form. And this defendant further says that he assented to Mrs. Espy's name being used in said deed, because he was indebted to her at that time, as hereinafter stated, and it was his desire and intention, so far as he could do so, to protect her, while under the advice given as aforesaid he was endeavoring to protect his interest in said real estate.

"And this defendant also says that Mrs. Espy was not consulted in reference to the making of said deed, nor was she advised that it was to be made. Said deed was made without her knowledge, and she was not informed of the existence of the same until long after the date of the transaction, as is hereinafter set forth.

"And this defendant further says that, on or about the 11th of March, 1847, being greatly in want of money, and being indebted, as hereinafter stated, to his mother-in-law, the said Elizabeth, in the sum of ninety dollars, for which he

had on the 4th of February, 1846, given to her a promissory note, in the words and figures following, to wit:

" ' PHILADELPHIA, Feby. 4, 1846.

" ' I promise to pay Elizabeth Espy, or her heirs, the sum of ninety dollars, lawfully borrowed money, which is borrowed of her for one year from the date, Feby. 4, 1846.

" ' HENRY FREAS.'

" Which note had been given for money on the day therein specified by her, actually and in good faith lent and advanced to him, and which sum of money was fully due and payable. This defendant, in consideration of such indebtedness, and which as hereinafter stated he had previously endeavored to secure to her in making said deed, and which indebtedness he was not otherwise able to pay off and liquidate, and in consideration also of a further sum of sixty dollars in cash to him actually and in good faith paid by the said Elizabeth Espy, which sum, with the said promissory note, made up the consideration mentioned in said deed, did, absolutely, and without any condition, deliver to said Elizabeth the said deed, dated 5th day of May, 1846, and took back from her the said promissory note.

" And this defendant further says, that the said Elizabeth had not been informed of the existence of said deed until on or about the said 11th day of March, 1847, when it was communicated by him to her, together with the reasons for which it had been made, and the fact that the decree or judgment which had been obtained by said Freas, was then entirely settled and out of the way."

The defendant, in his answer, further alleges that on the 11th of March, 1847, he had no creditors, except Mrs. Espy, and that besides her, A. was the only one who pretended to have any claims against him.   He denies that A.'s claim was a just one.   He denies any knowledge of the conversation alleged to have taken place in reference to the deed between A. and Mrs. Espy.

Mrs. Espy's answer corresponds in substance with that of Henry Freas, and she expressly denies the alleged conversation with A.

The evidence offered in support of the pleadings sufficiently appears in the opinion of the Chancellor.

*A. L. Eakin* and *Samuel A. Allen,* for the complainant, cited *Deale* v. *Paige,* 2 *Green's Ch. R.* 143 ; *Boyd* v. *Dunlap,* 1 *Johns. Ch. Rep.* 478 ; 2 *Hill's Rep.* 27 ; 3 *Hill's Rep.* 513 ; 7 *Alabama Rep.* 269 ; 22 *Maine Rep.* 360 ; 1 *Hal. Ch. Rep.* 76 ; *Hart* v. *Teneyck,* 2 *Johns. Ch. Rep.* 90 ; *Vanderhoof* v. *Clayton,* 2 *Hal. Ch. Rep.* 192.

*John T. Nixon,* for defendants, cited 8 *Wheat. Rep.* 242 ; 1 *Hare & Wal. Am. Lead. Ca.* 55, et seq. ; 1 *Conn. Rep.* 525 ; *Lush* v. *Wilkinson,* 5 *Ves.* 384 ; *Battersbee* v. *Farrington et al.,* 1 *Swan. R.* 106 ; 18 *Johns. Rep.* 515 ; 1 *Story's Eq. J.* 334, et sequitur.

THE CHANCELLOR. The only witness on behalf of the complainant as to the allegations of fraud contained in the bill, is E. He details a conversation which took place some time after the execution of the deed, between himself and one of the defendants, Henry Freas, Jr., the grantor in the alleged fraudulent conveyance. This evidence was objected to when taken before the master. As a general rule, what the grantor says to a third person, not in the presence of the grantee, either before or after the execution of the deed, is not legal evidence against the grantee, and cannot be used to invalidate his title. At the time of this conversation the deed was on record, but there had been no delivery of it to Elizabeth Espy ; and it is admitted that, at the time, she knew nothing of the deed—there had been no negotiation between herself and Freas in reference to it, and she was a stranger to the whole transaction. At that time she had no rights which could be impaired by any thing Freas could say. The conversation was respecting a passed transaction, with which, it is admitted, Mrs. Espy

had had nothing to do. It was not in reference to any contemplated negotiation which was to take place between Freas and Mrs. Espy. In this view, the evidence is not objectionable. But did I consider that this evidence operated to the disadvantage of Mrs. Espy's rights, I should admit it with great reluctance. If Mr. E. had been compelled, by the opposite party, to give this evidence, it would be free from animadversion. But how is the fact? Freas makes this deed for the avowed purpose of defrauding a creditor. The attorney and counselor-at-law, who is made a defendant in the cause, for the purpose of discovery, admits he prepared the deed, and aided and abetted the debtor in his unlawful purpose. Some difficulty occurring between counsel and client, another counsel is selected, to whom the debtor reveals the transaction. By the aid of the latter counsel, the creditor is brought to a compromise. Subsequently, the debtor becomes further indebted to this counsel, and then, when this fraudulent deed is set up to defeat his claim, he volunteers to detail a confidential communication, made to him by his client.

But this evidence, as far as the fraudulent purpose of Freas is concerned in executing the deed, does not vary the case from the one presented by the pleadings.

The answers of Henry Freas, Jr., and of Elizabeth Espy, admit that the deed in question was made and executed at the time, for the purpose of placing the property beyond the reach of the guardian of Henry Freas, who had then lately obtained a decree or judgment against him.

It is not alleged, in the bill, that when the deed was executed, Henry Freas, Jr., had any other creditor than his guardian, although it is alleged that he declared he executed the deed for the purpose of defrauding his guardian, *and other creditors.* The bill does not show that the judgment creditors, under whom the complainant claims, were creditors at that time, or that the debts were contracted, in any manner, on the faith of Henry Freas being the owner of the property. It appears, however, in the case, that the debt to Mr. A. was contracted prior to the execution of the

deed and the one to Mr. E., subsequent thereto.   It does not
appear that Freas had any creditors at the time the deed was
executed, except his guardian and Mr. A., or any subsequent
creditors, except Mr. E.

A deed, fraudulent as to judgment creditors, may be im-
peached by a purchaser holding a conveyance under that
judgment; but such purchaser stands in no better situation
than the judgment creditor filing a bill to avoid the alleged
fraudulent deed.   To ascertain, therefore, the rights of the
complainant, and whether he is entitled to the relief sought
by his bill, we must examine into, and ascertain the rights
of the judgment creditor under whom he claims.

A deed executed with intent to delay, hinder, or defraud
creditors and others of their just and lawful actions, suits,
and debts, shall, in the language of the statute, " be deemed
and taken to be clearly and utterly void, frustrate, and of no
effect."   But such deeds are good as between the parties, and
as against all other persons whose actions, suits, debts,
accounts, damages, penalties, forfeitures, and demands have
not been, or may not be in any wise disturbed, hindered, or
defeated by them.

Such a deed may be avoided, not only by existing, but by
*subsequent* creditors.   This was controverted on the argu-
ment, but the principle is established by numerous authori-
ties.   Where a distinction has been made between *existing*
and *subsequent* creditors, it has been where the conveyance
was not actually fraudulent, but the fraud was a legal infer-
ence from the debtor's embarrassment at the time, or from
other circumstances.   Whether the weight of authority in
such cases, favors this distinction, may be questioned, but it
is well settled that in cases of actual fraud, the distinction
does not exist.   See the numerous cases cited in 1 *Am. Lead.
Cas.* 64, 65, and 1 *Story's Eq.* 361.

The judgment under which the complainant claims was
in favor of A. and E.   It is a judgment on attachment for
the sum of one hundred and sixteen dollars and eighty-six
cents.   The debt of A. was thirteen dollars and twenty-six
cents, and was contracted prior to the deed in question.

E.'s debt was fifty dollars and ninety cents, and was contracted October 9th, 1848, more than two years after the date of the deed.

Could A. question this conveyance as fraudulent against himself, as a creditor of Henry Freas, Jr. ?

It appears that the consideration of A.'s debt was for services as a lawyer, rendered by him to Henry Freas, Jr., in defending the claim prosecuted against Freas by his guardian, and to defeat which claim the conveyance was executed ; that A., as Freas' counsel, drew the deed for this fraudulent purpose, and, as a master of this court, took the acknowledgment.

Henry Freas, in his answer, says that he went with one William Fries to consult Mr. A. ; that in that interview William suggested that a conveyance should be made to some one, in order to defeat the claim made against Henry by his guardian. A., as attorney and counsel, advised this should be done, and that the deed should be antedated so as to make it appear prior in point of time to a judgment or decree, which had been, or would shortly be obtained in favor of the guardian.

A., in his answer, admits that he drew and took the acknowledgment of the deed, and that Freas told him at the time he meant to cheat his guardian and other creditors.

Upon what principle of equity can I set aside this conveyance in favor of A.'s debt ?

Equity and the common law abhor the fraud, and the statute law has given its sanction and authority to the court in discountenancing such conveyances. But to set aside such a deed for fraud in favor of one who advised and counseled in its execution, would be in violation of every principle upon which this court administers equity.

Freas executed the deed to defraud his creditor. A. counseled and aided Freas in accomplishing his purposes, and it would be inequitable that A. should be permitted to appropriate to himself the advantages of the conveyance, as it would be to allow Freas himself to do so.

The complainant, therefore, as far as he claims under A.

as a judgment creditor, is not entitled to the interference of the court. It remains to be seen whether he stands in any better situation claiming under E.

As has been already remarked, E. was not a creditor at the time of the execution of the deed. His debt was not contracted on the faith of Freas being the owner of this property. But this fact, as was before observed, will not prevent him, or the complainant claiming under him, from calling in question this conveyance and impeaching it, on the ground of fraud. Was it a question between A. and Freas, or a person claiming under Freas, with knowledge of the fraud, or whose conveyance was in any way tainted with it, the case might be free from difficulty. Whether A. or the person claiming under him is entitled to relief, must depend upon the nature of the title and the respective equities of the complainant and defendants.

What is the situation of E., as respects the alleged fraudulent transaction, and how do his equities compare with those of Mrs. Espy, whose rights it is sought, by this bill, to supersede?

After the execution of the deed, A. turned his client over to E., and E. was retained as counsel to defend Freas against the claim which his guardian was prosecuting against him. Freas informed E. of the preparation he had made to defraud his guardian, and explained to him the manner and the purpose for which the deed had been executed. E. undertook the cause, and the result was that instead of the guardian's recovering his money against Freas, a compromise was effected, upon his guardian's paying Freas eighty dollars and also the costs of the suit, being eighty dollars more. What influence the fact of Freas having disposed of his property had in bringing the guardian to terms, we have no means of ascertaining.

Nearly a year after this transaction was closed, Freas became indebted to E. about fifty dollars for other professional services. Shortly after, A. issues the attachment, and E. comes in as a creditor under the same. No other creditor applies. The complainant holds under this judgment in

attachment. E., as solicitor, files the bill in this suit, and A. conducts the suit as counsel for the complainant. A. is also made a defendant to the bill, as a *particeps criminis* in the fraud. He answers and discloses the transaction, and admits the fraud.

All these circumstances, taken in connection, do not place E., as a judgment creditor, in a very favorable position to ask the aid of this court in setting aside the alleged fraudulent conveyance for his benefit. The complainant stands in no better relation claiming under him.

If this was the whole case, I should very much doubt the propriety of this court interfering. But taking into consideration the circumstances under which Mrs. Espy holds her title, I am satisfied that the complainant ought to be left to his remedy at law.

Mrs. Espy denies all participation in the alleged fraud. She had no knowledge of the execution of the deed. It was executed and recorded without any consultation with her, and she was ignorant of its existence until the following March, ten months after its execution. Her denial is not questioned, and she stands before the court with a clear conscience in reference to the transaction. The charge in the bill, that she declared to A. that she meant to hold the property to prevent Freas' creditors from getting his land, and for the benefit of Freas' children, is denied by her, and there is no proof to sustain the allegation.

The answer of the defendant A. is no evidence of the fact.

At the time of the execution of the deed, Henry Freas was indebted to Elizabeth Espy in the sum of ninety dollars, for which she held Freas' note, bearing date more than eight months prior to the date of the conveyance.

On or about the 11th of March, 1847, which was more than eighteen months prior to the time when E.'s debt was contracted—at a time when Freas had no existing creditors, and after his settlement with his guardian—Freas informed Mrs. Espy of the execution of the deed. He told her the purpose for which it had been executed, but informed her

that the difficulty with his guardian had been adjusted, and offered to deliver to her the deed, if she would pay him sixty dollars, the difference between what he owed her and the consideration mentioned in the deed. To this she assented; paid him the sixty dollars and took the deed.

It is insisted on behalf of the complainant—First. That it is not proved that Mrs. Espy gave the consideration alleged, and that it is necessary to support this part of her answer by proof.

The principle contended for is a familiar one, and required no reference to authorities to support it; that any allegation of the answer which is not directly responsive to the bill, but sets forth matters in avoidance or bar, is denied by the general replication, and must be proved *aliunde*.

The question is, whether this part of Mrs. Espy's answer is responsive to the bill, in such a view as will make it evidence for her.

The bill charges that Freas executed the deed to defraud a certain creditor, that he did not deliver it to Mrs. Espy, and that she paid no consideration for it. Mrs. Espy admits this, but sets up a transaction which occurred some eighteen months afterwards, in avoidance of the consequences which must necessarily follow from such admissions. An avoidance is something *dehors* that which is admitted, and subsequent thereto. If a defendant admits the receipt of a certain sum of money on a particular day, and avers that he paid it over, that may discharge him; but if he alleges he paid it over at a subsequent time, or made an appropriation of it, by direction of the person for whom he received it, he must prove such allegations. *Thomson* v. *Lambe*, 7 *Ves.* 58; *Hart* v. *Teneyck*, 2 *J. C. R.* 92. It is true, one of the interrogatories put by the complainant is, whether any consideration was paid by Mrs. Espy for the deed; but most certainly, this does not give the defendant a latitude of setting up and explaining a negotiation in reference to the consideration and delivery of the deed, which occurred some eighteen months afterwards. The answer, therefore, of Mrs. Espy, cannot be taken as evidence of the considera-

tion which passed between herself and Freas, or as an explanation of a transaction some months after the execution of the deed.

But I am perfectly satisfied with the testimony of Elizabeth Espy, the grand-daughter, who proves the whole transaction as it is alleged in the answer. Her testimony was questioned only on the ground of her extreme youth. She was fifteen years old when examined. Her testimony is clear, and is given, as far as we can judge of evidence taken by commission, as this was, with much intelligence. Her evidence bears on the face of it the impress of truth. She states many facts, to which others were witnesses, as well as herself, and some of which could have been impeached, if not accurately detailed by her. She shows one important fact, the contrary of which is alleged in the bill, and that is the pecuniary ability of Mrs. Espy to pay the consideration money. If this was untrue, it could easily have been disproved, for she states the source from which Mrs. Espy received her means, each week, in the city of Philadelphia. Her testimony proves the transaction as stated in the answers of Mrs. Espy and Henry Freas, Jr., and there is no circumstance in the whole case, that leads me to doubt that we have the truth of the whole transaction between Mrs. Espy and Henry Freas, Jr., in their answers. There is a frankness in the answers, corresponding with the case as it has been developed, which commends itself to the consideration of the court.

But the complainant further insists that, admitting Mrs. Espy's allegations to be true as to the delivery of the deed to her, and as to her payment of the consideration money, the deed having been fraudulently executed by Freas, and put on record, no subsequent arrangement or negotiation with regard to it, between Mrs. Espy and Freas, could purge it of the original fraud. If Mrs. Espy had been a partaker in the iniquity of the transaction, the position would be correct; and a court might well refuse to listen to any explanation of a subsequent transaction between the parties

to the fraud, as an antidote to the poison infused into the original transaction. But when she became, with her consent, a party to this deed, it was with no intention of defrauding any one, and it was at a time when there was no person who could be injured by her accepting it. Any improper use to be made of the deed, then or thereafter, was not contemplated by either Freas or herself. I cannot see that Mrs. Espy has done anything which does not comport with fairness and honest dealing.

My only doubt about the case has been whether I ought not, on account of the smallness of the consideration given by Mrs. Espy, to allow the complainant to take the property, upon paying Mrs. Espy what she paid for it, with the interest. I would do so if the complainant claimed under judgment creditors, standing in a position entirely aloof from the fraudulent transaction. But, on reflection, I am satisfied to dismiss the bill, without costs to be paid by either party to the other.

The view I have taken of the case is no hardship upon the complainant. He purchased the property on speculation. The deed from Freas to Mrs. Espy was on record, and the complainant knew that the title he obtained would be of no value, unless he could successfully impeach the deed for fraud. The whole case was before him, and he bought with his eyes open.